UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

INLAND DIAMOND PRODUCTS CO.,

    Plaintiff,

    v.                                       Case No. 20-C-352

CHERRY OPTICAL INC.,

    Defendant.

---

## DECISION AND ORDER

---

Plaintiff Inland Diamond Products Co. accuses Defendant Cherry Optical Inc. of infringing its patents, U.S. Patent No. 8,636,360 (the '360 Patent) and U.S. Patent No. 9,405,130 (the '130 Patent), which involve a method for forming a beveled lens for use with eyeglasses. This matter comes before the court on the parties' cross-motions for summary judgment. For the following reasons, Defendant's motion will be granted, Plaintiff's motion will be denied, and the case will be dismissed.

### BACKGROUND

The '360 and '130 Patents are related and are both entitled "Beveling Wheel, Method for Forming a Beveled Lens for Use with Eyeglasses and a Beveled Lens." The '360 Patent issued on January 28, 2014, and the '130 Patent issued on August 2, 2016. The patents are directed to technology for securing lenses within an eyeglass frame. In particular, the lenses include a bevel (highlighted in yellow below) that fits within a retention structure channel of the eyeglass frame (highlighted in red):



*Hoya* Claim Construction Opinion and Order, Dkt. No. 129-13 at 3 (citing Fig. 2 of the '360 and '130 Patents).

Plaintiff asserts Dependent Claims 2, 4, and 6 of the '360 Patent and Dependent Claim 4 of the '130 Patent. Claim 2 of the '360 Patent depends from claim 1, which provides:

> A prescription plastic lens for use in an eyeglass frame, said eyeglass frame having a receiving channel defined by opposed interior wall surfaces having a first angle therebetween, the receiving channel having a channel bottom at one end and a channel opening at the other end, the plastic lens comprising:
>
> A prescription lens body generally defined by a peripheral edge, the peripheral edge having a bevel extending away from the peripheral edge to a vertex, the bevel having a distal portion having a second angle defined between opposing sides of the bevel adjacent to the vertex, the bevel being receivable within the receiving channel, at least a portion of the vertex of the bevel being in contact with the receiving channel bottom and having an interference fit with the receiving channel bottom when held within the eyeglass frame, the first angle being greater than the second angle;
>
> wherein the portion of the vertex in contact with the receiving channel bottom is in compression once the plastic lens is fitted in the frame.

'360 Patent col. 8 l. 36–55. Claim 2 further states that the height of the bevel ranges from 0.25 millimeters to 1.1 millimeters. *Id.* col. 8 l. 56–57. Claims 4 and 6 depend from claim 3. Claim 3, which also depends from claim 1, requires that the bevel be a triangle having an apex. *Id.* col. 8 l. 58–59. Claim 4 additionally requires that the apex have an angle in the range from 100 degrees to

2

130 degrees.  *Id.* col. 8 l. 60–61.  Finally, claim 6 requires that the height of the triangle range from 0.25 millimeters to 1.1 millimeters.  *Id.* col. 8 l. 64–65.

As for the '130 Patent, asserted claim 4 depends from claims 1 and 3.  Claim 1 provides:

A pair of eyeglasses, comprising:

an eyeglass frame having a receiving channel, the receiving channel defined by opposed interior wall surfaces having a first angle therebetween, the receiving channel having a channel bottom at one end and a channel opening at the other end; and

a prescription plastic lens secured in the eyeglass frame and including a body having a peripheral edge, the peripheral edge having a bevel extending away from the peripheral edge to a vertex, the bevel having a distal portion having a second angle defined between opposing sides of the bevel adjacent to the vertex and being less than the first angle of the receiving channel, at least a portion of the vertex of the bevel being in contact with the receiving channel bottom, having an interference fit with the receiving channel bottom, and being in compression.

'130 Patent col. 8 l. 51–67.  Claim 3 depends from claim 1 and requires that the bevel be a triangle having an apex.  *Id.* col. 9 l. 3–4.  Claim 4 depends from claim 3 and requires that the apex have an angle in the range from 100 degrees to 130 degrees.  *Id.* col. 9 l. 5–6.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The fact that the parties filed cross-motions for summary judgment does not alter this standard.  In evaluating each party's motion, the court must "construe all inferences in favor of the party against whom the motion under consideration is made."  *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).  The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial."  *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted).  "The

3

nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citation omitted).

## ANALYSIS

Defendant asserts that the '360 and '130 Patents should be found invalid. Under 35 U.S.C. § 282, "[a] patent shall be presumed valid" and "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims." 35 U.S.C. § 282(a). To overcome the presumption of validity, a party must prove invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i P'ship*, 564 U.S. 91, 95 (2011).

Defendant maintains that Plaintiff's arguments regarding validity are barred by issue preclusion. It asserts that the Patent Trial and Appeal Board (PTAB), in separate inter partes review (IPR) proceedings, invalidated claims 1 and 3 of the '360 and '130 Patents as obvious. *See* Dkt. Nos. 106-6 & 106-7. In particular, the PTAB found that claims 1 and 3 of the '360 Patent would have been obvious over the combined disclosures of the Gottschald and Schaeffer patent application publications and that claims 1 and 3 of the '130 Patent would have been obvious over the combined disclosures of Gottschald, Schaeffer, and the American National Standard for Ophthalmics: Requirements for Ophthalmic Frames: ANSI 280.5-1997 (ANSI). *Id.*

As relevant here, Gottschald is a 1999 World Intellectual Property Organization published patent application entitled "Method and Device for Forming a Bevel on the Edge of a Spectacle Lens." *See* Dkt. No. 106-18. The PTAB stated that Gottschald "teaches a method of optically scanning the groove of a spectacle frame, optically scanning the bevel groove of a lens machining

4

tool (such as a grinding wheel), inputting such values into a control device, and machining the lens bevel using the determined values." Dkt. No. 106-6 at 21. Schaeffer is a U.S. Patent Application Publication entitled "Method of Beveling an Ophthalmic Lens Blank, Machine Programmed Therefor, and Computer Program." Dkt. No. 106-19. The PTAB explained that Schaeffer teaches that "prescription eyeglass lenses are formed from glass or plastic lens 'blanks' having certain desired properties to provide the correct prescription for the patient," "[t]he lens blank may be shaped using an edger," and "[t]he blank is edged so that the periphery of the finished lenses fit into the openings on the frames." Dkt. No. 106-6 at 23. The PTAB also relied on the ANSI's definitions of "eyeglasses" and "spectacle" so as to "inform one's understanding of Gottschald." Dkt. No. 106-7 at 23. Based on these disclosures, the PTAB concluded that claims 1 and 3 of the '360 Patent and claims 1 and 3 of the '130 Patent were unpatentable. *See* Dkt. Nos. 106-6 & 106-7.

Defendant asserts that the PTAB's rulings have a preclusive effect with respect to claims 1 and 3 of the '360 and '130 Patents in the instant litigation. Thus, Defendant argues, Plaintiff is collaterally estopped from asserting that the dependent claims at issue (claims 2, 4, and 6 of the '360 Patent and claim 4 of the '130 Patent) are valid.

The doctrine of collateral estoppel, also known as issue preclusion, "serves to 'preclude parties from contesting matters that they have had a full and fair opportunity to litigate,' which 'protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1382 (Fed. Cir. 2018) (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). Although regional circuit precedent guides the general principles of collateral estoppel in a patent case,

5

Federal Circuit precedent applies to "questions involving substantive issues of patent law, issues of issue preclusion that implicate substantive patent law issues, or issues of issue preclusion that implicate the scope of [the Federal Circuit's] previous decisions." *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015) (citation omitted). In the Seventh Circuit, a party invoking issue preclusion must show:

> (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action.

*Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014) (citation omitted).

As an initial matter, Plaintiff argues that collateral estoppel is inapplicable here because both the burden of proof to show invalidity and the claim construction standard are much less stringent in PTAB proceedings than in district court proceedings. After all, "IPRs use a preponderance of the evidence burden of proof rather than the district court's clear and convincing evidence burden of proof. And IPRs, at the time of these proceedings, used the broadest reasonable interpretation for claim construction rather than the narrower standard from *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) used in district court." *Celgene Corp. v. Pete*, 931 F.3d 1342, 1362 (Fed. Cir. 2019). Plaintiff concedes that claim 3 in both the '360 and '130 Patents was cancelled in prior IPR proceedings. It nevertheless asserts that, in this case, Defendant was required to conduct an independent evaluation of claim 3 under the clear and convincing evidence standard as part of its invalidity analysis of claims 4 and 6 of the '360 Patent and claim 4 of the '130 Patent. Defendant's failure to do so, Plaintiff argues, renders Defendant's invalidity analysis "fatally lacking." Dkt. No. 97 at 30.

6

In *B&B Hardware, Inc. v. Hargis Indus., Inc.*, the Supreme Court held that a final decision in an agency proceeding may preclude issues raised in a subsequent court proceeding. 575 U.S. 138, 148 (2015) ("[I]ssue preclusion is not limited to those situations in which the same issue is before two *courts*. Rather, where a single issue is before a court and an administrative agency, preclusion also often applies."). The Federal Circuit confirmed that this general principle of issue preclusion extends to final written decisions rendered by the PTAB in IPR proceedings. *See Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377, 1381 (Fed. Cir. 2022) ("It is well established that collateral estoppel applies to IPR proceedings." (citation omitted)); *Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1250–51 (Fed. Cir. 2019) ("[T]he issue preclusion doctrine can apply in this court to the Patent Trial and Appeal Board's decision in an IPR once it becomes final."). This outcome is "necessitated by the IPR statutory scheme because if the PTAB finds that a claim is unpatentable during an IPR proceeding, the [Patent and Trademark Office] is required to issue a certificate cancelling the claim." *Intellectual Ventures I, LLC v. Lenovo Group Ltd.*, 370 F. Supp. 3d 251, 256 (D. Mass. 2019) (internal quotation marks and citation omitted); *see also Boston Sci. Corp. v. Cook Med. LLC*, No. 17-cv-3448, 2023 WL 1476573, at *3 (S.D. Ind. Feb. 2, 2023) ("Not only does it make sense to preclude a patentee from later disputing the invalidity of claims (or materially identical claims) that were found invalid at the IPR, but to find otherwise would neuter IPR proceedings."). "[W]hen a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc. v. Baster Int'l Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013).

In short, the doctrine of issue preclusion applies to final PTAB decisions in IPR proceedings. *See Google*, 54 F.4th at 1381. The PTAB's decision finding claims 1 and 3 of the

'360 and '130 Patents invalid is final and thus estops Plaintiff from relitigating the validity of those claims in this court.  As a result, Defendant was not required to perform an independent invalidity analysis for claims 1 and 3 as part of its invalidity arguments regarding claims 2, 4, and 6 of the '360 Patent and claim 4 of the '130 Patent.

Next, the parties dispute whether the invalidity determination in the IPR proceedings regarding claims 1 and 3 may be extended to invalidate claims 2, 4, and 6 of the '360 Patent and claim 4 of the '130 Patent.  Plaintiff argues that because these dependent claims survived the IPR proceedings, it should not be precluded from disputing invalidity in this case when it successfully did so before the PTAB.  Conversely, Defendant contends that Plaintiff is collaterally estopped from asserting these claims because the asserted claims depend from claims 1 and 3 and do not add a limitation that would materially alter the invalidity analysis.

The Federal Circuit has recognized that "collateral estoppel is not limited 'to patent claims that are identical.  Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply.'"  *Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1352 (Fed. Cir. 2018) (quoting *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)); *see also Soverain*, 778 F.3d at 1319 ("Complete identity of claims is not required to satisfy the identity-of-issues requirement for claim preclusion.").  The court has explained that "[i]f the differences between the *unadjudicated* patent claims and *adjudicated* patent claims do not materially alter the question of invalidity, collateral estoppel applies."  *Ohio Willow*, 735 F.3d at 1342 (emphasis added).

Claims 2, 4, and 6 of the '360 Patent and claim 4 of the '130 Patent are not "unadjudicated patent claims;" they were, in fact, adjudicated in the IPR proceedings.  As to the '360 Patent, the petitioner in the IPR proceedings argued that claims 1 through 7 and claims 9 through 12 would

have been unpatentable over the Nakagawa2, Santinelli, Shibata, and Umeda references. Dkt. No. 106-6 at 33. The PTAB concluded that claims 2, 4, 5, 6, 9, 10, and 11 of the '360 Patent had not been proven unpatentable. *Id.* at 38. With respect to the '130 Patent, the petitioner argued that claim 4 was unpatentable, and the PTAB concluded that claims 2, 4, 5, 9, 11, and 12 had not been demonstrated to be unpatentable. Dkt. No. 106-7 at 19–20, 40.

Because the claims asserted were adjudicated before the PTAB, the court will not estop Plaintiff from disputing invalidity in this case, even if the invalidity challenge asserted during the IPR proceedings was different than the challenge asserted here. Therefore, Plaintiff is not collaterally estopped from disputing invalidity as to claims 2, 4, and 6 of the '360 Patent and claim 4 of the '130 Patent. *See Boston Sci. Corp. v. Cook Grp. Inc.*, No. 17-cv-3448, 2023 WL 1452172, at *37 (S.D. Ind. Jan. 31, 2023). With these considerations in mind, the court turns to Defendant's invalidity arguments.

Defendant argues that the '130 and '360 Patents are invalid as obvious. A patent is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). While the "ultimate judgment of obviousness is a legal determination," *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007), that determination "is based on underlying factual inquiries, including (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) any secondary considerations of non-obviousness." *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1371 (Fed. Cir. 2018) (citation omitted).

9

Defendant cites a number of prior art references to demonstrate the scope and content of the prior art, including Gottschald and U.S. Patent Nos. 3,834,089 (Barnett); 4,394,099 (Santinelli); 7,540,798 (Shibata 1); 6,089,957 (Shibata 2); 6,623,339 (Igarashi 1); 6,845,678 (Igarashi 2); 2,617,236 (Allen); 6,254,234 (Utsumi); 6,840,851 (Raffaelli); and 3,520,091 (Raphael). It also cites Gerber Optical Elite Edger (1992) COBURNGERBER-COS000001 at 25; the Coburn Catalog (mid-1980s); MEI-COS001-MEI-COS081 (2004–08); and KEVIN WAKEFIELD, BENNETT'S OPHTHALMIC PRESCRIPTION WORK 186–87 (4th Ed. 2000). Defendant argues that the combination of these prior art references render the '360 and '130 Patents invalid as obvious.

"The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR*, 550 U.S. at 416. "[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *Id.* at 418. But "[i]f a person of ordinary skill in the art can implement a predictable variation, and would see the benefit of doing so, § 103 likely bars its patentability." *Id.* at 417. "[A]ny need or problem known in the field of endeavor at the time of the invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* at 420. As the Supreme Court has explained:

> When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.

*Id.* at 421.

As noted earlier, the PTAB found claims 1 and 3 of the '360 and '130 Patents obvious in light of Gottschald, Schaeffer, and the ANSI. Plaintiff argues that claims 2, 4, and 6 of the '360

10

Case 1:20-cv-00352-WCG   Filed 09/28/23   Page 10 of 14   Document 136

Patent and claim 4 of the '130 Patent are not obvious over the disclosure of Gottschald, as Gottschald is completely silent as to the bevel height and bevel angle of the lenses it utilizes. To repeat, the '360 Patent requires that the bevel and triangle height be 0.25 to 1.1 millimeters and the '360 and '130 Patents require an angle range of 100 to 130 degrees.

With respect to claims 2 and 6 of the '360 Patent, Defendant asserts that Barnett, Santinelli, Shibata, and Igarashi teach bevel heights from 0.0 millimeters to 1.80 millimeters. *See* Dkt. No. 106-36 at 37. It contends that these patents, which were issued as early as 1974, were known in the field of invention and practiced by opticians. Defendant maintains that it would have been obvious to use the edging machines and teachings of these references, in combination with Gottschald's teachings, to cut a bevel and triangle within the height requirements of claims 2 and 6.

As to claim 4 of the '360 and '130 Patents, Defendant argues that while Gottschald does not teach a limit or range of value for the bevel angles, the ranges would have been inherent in the practice of inventions claimed by the patents. Defendants cite prior art references such as Allen, Shibata 2, Utsumi, Igarashi 1, Igarashi 2, Raffaelli, Santinelli, Raphael, and Barnett, which have bevel angles ranging from 90 degrees to 130 degrees. In addition, the bevel angles were seen in BENNETT'S OPHTHALMIC PRESCRIPTION WORK, an ophthalmic text, which taught that bevels are usually 115 degrees, as well as the United States Military Specification MIL-S-37954B § 4.4.9 from 1990, which required that lenses used in testing frames have bevels ranging from 110 to 125 degrees. Defendant contends that the bevel angles disclosed in the prior art, which were issued as early as 1967, would have been inherent in the field of invention and well-used by a person of skill in the art practicing the teachings of Gottschald. Defendant further asserts that it would have been

11

obvious to a person of ordinary skill in the art to use commonly available edging equipment taught in the prior art to cut the lenses to certain bevel angles as required by the patents.

Considering the prior art, the scope of the patent claims, and the level of skill in the art, the court finds that there is no triable issue as to whether these measurements and angle ranges were well known for the bevel lens design. The claimed elements of the '360 and '130 Patents are familiar elements as shown by the numerous prior art references Defendant cites. Plaintiff does not dispute that the prior art references cited by Defendant were in existence at the time of the patent applications and practice these ranges and measurements. In this case, combining the teachings of Gottschald to include the particular bevel and triangle heights and apex angles taught in the prior art references identified by Defendant would yield predictable results for forming a beveled lens for use with eyeglasses. As a result, the court determines that it would have been obvious to use these measurements and ranges to create the beveled lenses to insert in eyeglass frames.

As to the secondary considerations, district courts must consider objective evidence of non-obviousness in every case to preclude hindsight bias. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1328 (Fed. Cir. 2016); *Bristol-Myers Squibb Co. v. Teva Pharm. USA, Inc.*, 752 F.3d 967, 977 (Fed. Cir. 2014). "Obviousness is ultimately a legal determination, and a strong showing of obviousness may stand 'even in the face of considerable evidence of secondary considerations.'" *ZUP*, 896 F.3d at 1374 (quoting *Rothman v. Target Corp.*, 556 F.3d 1310, 1322 (Fed. Cir. 2009)); *see also Ohio Willow*, 735 F.3d at 1344 ("[W]here a claimed invention represents no more than the predictable use of prior art elements according to established functions, . . . evidence of secondary indicia are frequently deemed inadequate to establish non-obviousness.").

Plaintiff offers evidence of unexpected results, fulfillment of a long-felt but unresolved need, and a strong skepticism about the viability of the claimed invention.  It argues that evidence of these secondary considerations creates a genuine issue of material fact as to the non-obviousness of the asserted patents to preclude summary judgment on this basis.  Plaintiff asserts that LensCrafters approached Ronald Wiand, the inventor of the asserted patents, and asked what could be done to resolve the issue of lenses shrinking and becoming loose over time.  Wiand Dep. 122:2–13, Dkt. No. 129-5.  It also cites the validity report of its expert, J. Edward de Rojas, to support its assertion that the patents resolved a long-felt need.  Dkt. No. 129 at 19 (citing Dkt. No. 129-3, ¶ 122).  More specifically, in his report, Mr. de Rojas stated, "It needs to be understood that Mr. Wiand's patents resolve the multiple factors of how the lens fits into the frame, under compression, with deformation at the vertex of the lens point-of-contact in the bottom of the frame eyewire receiving channel, and how it overcomes the multiple physical factors in size change of the lens over time, such as frame material creep and failures from unwanted compression stresses on the lens."  Dkt. No. 129-3, ¶ 122.  Plaintiff also notes that Cherry testified that edging the bevel of the lens at 100 degrees reduced spoilage.  But given the minimal differences between the prior art and the claimed invention, the statements offered by Plaintiff do not support that the patents resolved a long-felt need in the industry.  *See Geo. M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1304 (Fed. Cir. 2010) ("[W]here the differences between the prior art and the claimed invention are as minimal as they are here . . . it cannot be said that any long-felt need was unsolved.").

Plaintiff also asserts that, despite the functionality of the asserted patents, Mr. de Rojas testified that he was skeptical of the invention when he was first retained.  But Mr. de Rojas was skeptical of the patents' *validity*, not whether the patented product could be made.  *See* de Rojas

13

Dep. 284:3–6, Dkt. No. 129-8 ("I wasn't going to take - - I wasn't going to let you hire me unless I was sure of the circumstances by the patent. I wanted to make sure that I proved that the patent was valid."). Indeed, the evidence of Mr. de Rojas' skepticism supports the obviousness of the patents. Plaintiff's evidence of secondary considerations do not overcome the strong showing of obviousness.

In sum, the court finds that it would have been obvious for a person of ordinary skill in the art to combine the teachings and references in the prior art to invent the claimed method. This finding is not overcome by Plaintiff's evidence of non-obviousness. Accordingly, the court finds by clear and convincing evidence that claims 2, 4, and 6 of the '360 Patent and claim 4 of the '130 Patent are invalid pursuant to 35 U.S.C. § 103(a). Defendant's motion for summary judgment is therefore granted on this basis.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment (Dkt. No. 102) is **GRANTED** and Plaintiff's motion for summary judgment (Dkt. No. 97) is **DENIED**. Plaintiff's motion to exclude certain opinions (Dkt. No. 93), Defendant's motion to strike Plaintiff's expert (Dkt. No. 99), and Plaintiff's motion to strike Defendant's supplemental expert report (Dkt. No. 116) are **DENIED as moot**. Plaintiff's motion to restrict (Dkt. No. 92) and Defendant's motions to restrict (Dkt. Nos. 98, 101 & 117) are **GRANTED**. This case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 28th day of September, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge